**F I L E D**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff-Appellee, | |
| v. | No. 99-2184 |
|  | (D.C.  No. CR-98-467 MV) |
| MATHEW JAMES JOJOLA, | (D. N.M.) |
| Defendant-Appellant | |

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **ANDERSON**, and **HENRY**, Circuit Judges.

Matthew James Jojola was convicted after a jury trial of various assault and

weapons charges arising out of attacks on Ms. Cecilia Lente on the Isleta Pueblo on

January 4, 1997 and May 10, 1998:  (1) a misdemeanor assault for attacking Ms. Lente

with a footstool; (2) assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) for

attacking her with a shovel; (3) assault with a dangerous weapon under § 113(a)(3) for

attacking her with a rake; (4) a misdemeanor assault for attacking Ms. Lente with a rifle;

(5) assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6); and (6)

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

carrying and using a firearm during a crime of violence in violation of § 924(c). The first of these attacks occurred on January 4, 1997. The other five occurred on May 10, 1998

Mr. Jojola advances the following arguments on appeal: (a) the district court erred in denying his motions for a mistrial and for a judgment of acquittal based on the allegedly improper testimony of an FBI agent; (b) the district court erred in denying his motions for a mistrial and a judgment on acquittal based on the prosecutor's remarks during closing argument; (c) the district court erred in instructing the jury; (d) the government violated his rights under the Double Jeopardy Clause by charging him with multiple counts based on the same offense; and (e) the evidence is insufficient to support his convictions. For the reasons set forth below, we reject Mr. Jojola's arguments and affirm his convictions and sentences.[1]

## I. BACKGROUND

On July 9, 1998, the government filed a seven-count indictment against Mr. Jojola. Mr. Jojola pleaded not guilty, and the case proceed to trial.

Viewed in the light most favorable to the government, see United States v. Jones, 44 F.3d 860, 864 (10th Cir. 1995), the evidence presented at trial established that Ms.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Lente and Mr. Jojola began living together in Isleta Pueblo, New Mexico in April 1994.[2] Their daughter was born in September 1996.  Although their relationship was very good at first, it soon deteriorated—due to jealousy and alcohol abuse.

On January 4, 1997, Ms. Lente and Mr. Jojola got into an argument, and Mr. Jojola hit Ms. Lente.  When she tried to leave, Mr. Jojola struck Ms. Lente with a footstool in the head, eye, and lip.  At the time, Ms. Lente did not report the incident to the tribal police.

The events leading up to the May 10, 1998 assaults began on the preceding evening, when Mr. Jojola returned to the trailer that they shared.  The two began to argue, and Ms. Lente threw a glass of water toward Mr. Jojola.  She missed him and hit a window.  Mr. Jojola called the tribal police, who arrested Ms. Lente after she refused a field sobriety test and transported her to a detention center.  At her request, the police called her mother, who came to the trailer to take custody of the couple's young daughter.  Ms. Lente's mother posted bail around 12:30 a.m.

After her release, Ms. Lente returned to the trailer to retrieve various items.  Mr. Jojola confronted her outside the trailer, told her that she could not take anything, and hit her in the face.  Ms. Lente grabbed Mr. Jojola by the shirt as he continued to hit her. When she fell to the ground, Mr. Jojola picked her up by the hair, knocked her back to

---

[2]  The Isleta Pueblo is in Indian Country.  See 18 U.S.C. § 1151(b); United States v. Chavey, 290 U.S. 357, 364-65 (1933).  We have jurisdiction pursuant to 18 U.S.C. § 1153(a).

the ground, and kicked her in the legs repeatedly.

While Ms. Lente was on the ground, she noticed a shovel and grabbed it to defend herself. Mr. Jojola took it from her and struck her in the leg. As she began to bleed, Mr. Jojola climbed on top of her, put the handle of the shovel on her neck, placed his knees on both sides of the handle, and hit her with it about five times. Mr. Jojola then got up and reached for a rake. While Ms. Lente remained on the ground, he hit her legs, face, and back with it.

As Ms. Lente began to crawl towards his truck, Mr. Jojola retrieved a rifle and pointed it her chest. He hit her with it, and she fell. Next, Mr. Jojola picked up a gasoline can, grabbed Ms. Lente by the hair, pulled her head back, and started to pour gas on her.

Then, Mr. Jojola placed the gun next to Ms. Lente's head and fired twice, once on each side of her head. Next, Mr. Jojola picked up a rifle. He fired it into the air and warned her to "[g]et the hell out of here and don't look back." Rec. vol. IV at 283. Ms. Lente managed to retreat to her truck. As she drove away, Mr. Jojola grabbed the shovel and slammed it into her truck's windshield.

Aside from Ms. Lente, the government presented several other witnesses. Dr. George Kennedy, an expert in emergency medicine, testified that he examined Ms. Lente on May 10, 1998. He stated that she had multiple contusions on her face, neck, chest,

4

and extremities and that her injuries were consistent with being hit by the butt of a rifle, a rake, or a shovel. Jeff Romero, an FBI agent, testified about the investigation. He described the search of Mr. Jojola's residence that he conducted along with other agents on July 6, 1998.

Mr. Jojola testified in his own defense. He maintained that Ms. Lente had assaulted him. According to Mr. Jojola, when Ms. Lente arrived back at the trailer at 1:00 a.m. on the morning of May 10, 1998, she told him she was there to get their daughter's things. She became angry and ran down the steps of the trailer to get a shovel. Before he took the shovel away from her, she hit him twice with it. She then grabbed a rake and hit him over the head and shoulders. He took the rake from her, but she continued to kick and punch him. He testified that he had only tried to block her punches and kicks.

According to Mr. Jojola's trial testimony, Ms. Lente then left the trailer but threatened to come back and shoot him. He tried to call the police but the phone did not work. About forty-five minutes later, Ms. Lente returned. He observed her opening his truck's passenger door and pouring gas into it. When he went outside to confront her, she poured gas on him. Mr. Jojola then told her that he was tired of her threats. According to his testimony, he "backhanded" her in the face two times. Id. at 381. Aside from instances in which he had tried to fend off her blows, he maintained, this was the only occasion on which he had struck her. Eventually, Ms. Lente left the trailer.

5

The jury returned guilty verdicts on six of the seven counts of the indictment. On counts one and four, it found Mr. Jojola guilty of lesser included misdemeanor assault offenses. As to counts two, three, six, and seven, it found him guilty of the felonies charged in the indictment. The jury acquitted Mr. Jojola of the offense charged in count V, carrying and using a firearm during a crime of violence (i.e., the assault charged in count IV), a violation of 18 U.S.C. § 924(c). The district court imposed concurrent six months terms of imprisonment on the misdemeanor offenses and concurrent sixty-three month terms on the felonies charged in counts two, three and six. On count seven (the § 924(c) charge), the court imposed the statutorily mandated, consecutive sixty-month term.

## II. DISCUSSION

### A. Statements of FBI Agent Romero

Mr. Jojola first argues that the district court erred in denying his motions for a mistrial and for judgments of acquittal on the basis of prejudicial remarks made by FBI Agent Romero. We review the district court's decision for an abuse of discretion. See United States v. Wacker, 72 F.3d 1453, 1466 (10th Cir. 1995). When motions for a mistrial or for a judgment of acquittal are based on the admission of improper evidence, a party is entitled to relief only if the court cannot conclude "with reasonable certainty that the reference [to the inadmissible evidence] had but very slight effect on the verdict of

the jury." United States v. Joe, 8 F.3d 1488, 1498 (10th Cir. 1993) (citation and quotation omitted).

Mr. Jojola focuses on three statements by Agent Romero during his trial testimony: (1) his statement, in describing his May 14, 1998 interview of Ms. Lente, that he "felt that the victim had been assaulted without cause," Rec. vol. IV at 201-02; (2) his statement, in describing his method of obtaining a search warrant, that he "was going to be constitutionally correct and follow the procedure to ensure that everything that I gathered was admissible in court," id. at 203; and (3) his statement, in describing what he had observed during the July 6, 1998 search of Mr. Jojola's residence, that the agents "did a protective sweep to see that he was not there, and I observed two rifles in one room," id. at 206.

Upon review of the record, we conclude that Mr. Jojola has failed to establish that he was prejudiced by any of these statements. The heart of the prosecution's case was Ms. Lente's first-hand account of the charged assaults. In light of that testimony—and the jury's decision to believe Ms. Lente's account rather than Mr. Jojola's—it is highly unlikely that the isolated statements to which he now objects affected the jury's deliberations. Moreover, the district court sustained Mr. Jojola's objections to all three of these statements. As to the first and third statements, the court gave the jury cautionary instructions informing it that the statements should not be considered. Such instructions "are ordinarily sufficient to cure any alleged prejudice to the defendant."

7

United States v. Cass, 127 F.3d 1218, 1225 (10th Cir. 1997).  In light of those instructions and the strength of the evidence supporting the government's allegations, we conclude that the district court did not err in denying Mr. Jojola's motions for a mistrial and for a judgment of acquittal on the basis of Agent Romero's statements.

### B.  Prosecutor's Comment on Mr. Jojola's Post-Arrest Silence

During closing argument, the prosecutor commented on the fact that Mr. Jojola had testified at trial but had refused to talk to police at the time of the initial investigation seven months earlier.  The prosecutor said, "Mr. Sizemore [Mr. Jojola's lawyer] has raised issues with regard to the time in this case, but it took seven months. We didn't hear anything about these statements until yesterday." Rec. vol. IV at 523.  Mr. Jojola objected, and the district court sustained the objection, reasoning that the prosecutor was "not entitled to comment on the Defendant's failure to make a statement."  See id. at 524. Mr. Jojola now argues that the prosecutor's comment about his refusal to talk to the police violated his due process rights.

As the government concedes, the Supreme Court held in Doyle v. Ohio, 426 U.S. 610, 616-19 (1976), that a prosecutor's use of a defendant's post-arrest silence for impeachment purposes violates the Due Process Clause.  "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that

8

silence." United States v. Canterbury, 985 F.2d 483, 486 (10th Cir. 1993). However, a prosecutor's questions or comments about a defendant's silence are subject to harmless error analysis. See United States v. Brooks, 940 F.2d 598, 601 (10th Cir. 1991). Thus, if the potential prejudice caused by the prosecutor's improper comments was harmless beyond a reasonable doubt, the conviction may be affirmed. Id.

Here, we agree with Mr. Jojola and the district court that the prosecutor's comment about his post-arrest silence was improper. Nevertheless, upon review of the entire record, we conclude that the comment was harmless beyond a reasonable doubt. The prosecutor's comment was quickly interrupted when Mr. Jojola's attorney objected. The district court sustained the objection, and the prosecutor did not mention Mr. Jojola's silence again. More importantly, the jury had ample opportunity to assess the conflicting testimony of Ms. Lente and Mr. Jojola and to decide which one of them was telling the truth. In light of the detailed testimony presented by these two witnesses concerning the events surrounding the charged assaults, we conclude beyond a reasonable doubt that the prosecutor's brief comment did not influence the jury's verdict.

### C. Jury Instructions Correcting Typographical Error in Indictment

Mr. Jojola's challenge to the jury instructions is based on a typographical error in the indictment. Count VI of the indictment charged Mr. Jojola with assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6). Count VII charged him with

9

using and carrying a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c). However, count VII described the crime of violence during which Mr. Jojola carried the firearm as, "an assault with a dangerous weapon to Cecilia Lente, as charged in Count VI of this indictment." Rec. vol. I, doc. 11 at 3. Count VII thus misidentified the crime charged in count VI: count VI charged assault resulting in serious bodily injury, not assault with a dangerous weapon.

The district court noticed the error after it had reviewed the proposed instructions to the jury. In instructing jury as to the charges against Mr. Jojola, the court corrected count VII so that it referred to the crime actually charged in count VI (assault resulting in serious bodily injury). The district court characterized the mistake in the indictment as a mere typographical error rather than a variance:

> [The error was not] a problem with notice or a problem with variance at all in terms of notice or in terms of proof. I view it simply as a typographical error that we didn't catch, and it needs to be modified so that the instructions that the jury get are consistent.
> But basically, the indictment from the very beginning as well as the evidence, as well as the arguments made by both attorneys during the entire proceedings indicate that Mr. Jojola knew that he was being charged with a use of a firearm for both assaults that were charged in the indictment.
> That is not news to anybody. It's simply a matter that was not caught in terms of a typographical error in the indictment, and which we continue to track throughout the jury instructions.

Rec. vol. V at 533-34.

Mr. Jojola argues on appeal that the district court's correction of the error in the

10

indictment confused the jury. The question of whether the jury was properly instructed is an issue of law, and we therefore engage in de novo review. See United States v. Lee, 54 F.3d 1534, 1536 (10th Cir. 1995). We "examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." United States v. Voss, 82 F.3d 1521, 1529 (10th Cir. 1995). We "consider all that the jury heard and, from [the] standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues." Durflinger v. Artiles, 727 F.2d 888, 895 (10th Cir. 1984) (quotations omitted). A conviction should be reversed on the basis of erroneous instructions only if the error was prejudicial in light of the entire record. Voss, 82 F.3d at 1529.

Here, Mr. Jojola has failed to explain in any detail how the district court's instructions correcting the typographical error misled the jury. From our review of the instructions, we find them to properly state the applicable law.

Moreover, the district court was authorized to correct the typographical error. Although it could not amend the substance of an indictment, our precedent allows the district court to make amendments to its form. See United States v. Cook, 745 F.2d 1311, 1316 (10th Cir.1984). An amendment as to form is one that does not mislead the defendant in any sense, does not subject the defendant to any added burdens, and does not otherwise prejudice the defendant. See id. at 1316. There is no indication of any

11

such prejudice here.

### D. Double Jeopardy Claim Arising out Allegedly Multiplicitous Indictment

Mr. Jojola argues that the indictment improperly charged seven separate crimes when the incidents in question arose out of his "single offense and conduct." Aplt's Br. at 17. He maintains that this deficiency violated his rights under the Double Jeopardy Clause of the Fifth Amendment. As the government notes, Mr. Jojola mentions the concept of duplicity (charging two or more offenses in the same count. See Aplee's Br. at 38 (quoting United States v. Trammel, 133 F.3d 1343, 1354 (10th Cir. 1998))). However, the substance of his challenge concerns an allegation of multiplicity—charging two or more crimes for a single act. See United States v. Haddock, 956 F.2d 1534, 1546 (10th Cir. 1992).

Mr. Jojola has failed to establish that the indictment is multiplicitous. As charged in the indictment, the assaults with the shovel, rake and rifle were discrete, sequential events. Although the assaults charged in counts IV and VI both involved a rifle, each offense had different elements. The offense charged in count IV—assault with a dangerous weapon—required the proof that Mr. Jojola used such a weapon to intentionally strike or wound Ms. Lente (or used a display of force that reasonable caused her to fear immediate bodily harm) and that he acted with the specific intent to do bodily harm. See Rec. vol. !, doc. 39, at 15; see also United States v. Gauvin, 173 F.3d 798,

12

805 (10th Cir. 1999) (noting that the offense requires proof of an "(1) assault (2) with a dangerous weapon (3) with intent to do bodily harm"). In contrast, the offense charge in count VI—assault resulting in serious bodily injury—required proof that Mr. Jojola intentionally struck or wounded Ms. Lente and that she suffered such an injury. See Rec. vol. I, doc. 39, at 20.; see also United States v. Benally, 146 F.3d 1232, 1237 (10th Cir. 1998) ("It is not necessary that defendant have assaulted the victim with the intent to do serious bodily harm—the resulting serious bodily injury coupled with the general intent to assault is sufficient to satisfy the elements of the felony."). Thus, each count of the indictment involved a separate offense requiring proof of different acts and different kinds of intent.

### E. Sufficiency of the Evidence

Finally, Mr. Jojola argues that the evidence presented at trial is insufficient to support the convictions because Ms. Lente's testimony was contradicted by his own testimony. Mr. Jojola's argument is undermined by our standard for reviewing sufficiency of the evidence claims: we view the evidence in the light most favorable to the government and ask only whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. See United States v. Simpson, 152 F.3d 1241, 1251 (10th Cir. 1998).

In challenging the sufficiency of the evidence, Mr. Jojola has merely observed

that there were factual disputes at trial.  The fact that the jury resolved those disputes adversely to him does not render the evidence insufficient.  From our review of the record, we conclude that there was ample evidence to support Mr. Jojola's convictions.

## III.  CONCLUSION.

For the reasons set forth above, we AFFIRM Mr. Jojola's convictions and sentences.

Entered for the Court

Robert H. Henry
Circuit Judge

14